Carolyn C. Bova
2 Westland Drive
Tewksbury, MA 01876

FILED
2010 JAN 28 P 1: 12
CLERK OF THE
BANKRUPTCY COURT
DISTRICT OF NH.

December 21, 2009

~~Steven M. Notinger, Esq.~~
Office of the US Trustee
1000 Elm Street, Suite 605
Manchester, NH 03101

~~Steven Notinger, Esq.~~
~~Donchess & Notinger & Tamposi, PC~~
~~547 Amherst Street, Suite 204~~
~~Nashua, NH 03063~~

> Re: **Renee's DANCE Dimensions vs Frank Beliveau & Sandra Beliveau**
> **C.A. No.: 2009-14-282 -JMD**

~~Dear Mr. Notinger,~~ *Complaint*

    On Tuesday, December 1, 2009, at the Bankruptcy Court in Manchester, New Hampshire, I questioned Frank Beliveau (hereinafter "Beliveau") as to why he failed to return monies owed Renee's DANCE Dimensions. Under oath, Beliveau testified he did not have an answer for me.

    I asked Beliveau what he did with check No.132, dated August 21, 2007, which was for first and last month's rent as well as the security deposit for 15 Church Street, Epping, New Hampshire. [See check No.132 attached as Exhibit A. See also, letters dated April 18, 2008 and April 22, 2008 requesting escrow account information attached as Exhibit B]. Beliveau replied "I put it in the bank." Beliveau subsequently failed to set up the escrow account. I further asked, "You put it in your business account?" Beliveau gestured his head in the affirmative.

    Beliveau further admitted under questioning to not informing Renee's DANCE Dimensions of the forthcoming foreclosure on the 15 Church Street, Epping, New Hampshire property. Beliveau was notified of the impending foreclosure by certified mail in January 2009 and the foreclosure deed was signed by Mr. Robert Howard on March 2, 2009. [See foreclosure documents attached as Exhibit C].

    Renee's DANCE Dimensions continued writing rent checks to Beliveau, one month in advance, to avoid additional late charges. Beliveau acknowledged he deposited these checks into his business account. I questioned Beliveau, "Why didn't you return the monies to us?" (meaning Renee's DANCE Dimensions). I noted, "You should have given us back the money." Beliveau answered "I sent you back a check," to which I replied, "Yeah, it was for May's rent."

    I wrote a letter on February 9, 2009 confirming our prior telephone conversations regarding the property and enclosed check No. 246. [See February 9, 2009 Letter attached as exhibit D]. Beliveau failed to mention any problems he may have been experiencing with the property at that time.

    On March 16, 2009, I sent Beliveau check No.262 for the April, 2009 rent. [See check No.262 attached as exhibit E]. Beliveau deposited this check into his Ocean Bank account. Beliveau did not own the 15 Church Street, Epping, New Hampshire property at that time.

    Check No.269, later returned to me by Beliveau, was dated April 5, 2009 and noted "rent - May 2009." Enclosed with the returned check were two letters from Beliveau stating two different reasons for returning the check. One letter was signed while the other letter was unsigned. Both letters were dated April 10, 2009 and mailed April 13, 2009. [See check No.269 and letters and envelope attached as exhibit F]

    Beliveau owes Renee's DANCE Dimensions monies paid for February 2009 rent (duplicate payment previously paid in check No. 132), March 2009 and April 2009 rent (Beliveau was no longer owner of the 15 Church Street, Epping, New Hampshire property), the security deposit paid in check No. 132 as well as $709.52 in legal fees and expenses Renee's DANCE Dimensions has incurred attempting to retrieve monies owed.

    Beliveau's debt owed to Renee's DANCE Dimensions should not be discharged because Beliveau misappropriated monies that should have been in escrow and deliberately led Renee's DANCE Dimensions to believe there were no issues with the parties' lease agreement. As a direct result of Beliveau's actions, Renee's DANCE Dimensions continued to write rent checks to Beliveau. As you can see, Beliveau deposited these checks into his business account and used these monies for his own business and personal benefit.

                                                Sincerely,

                                                Carolyn C. Bova
                                                Business Manager
                                                Renee's DANCE Dimensions

cc: Brian Tierney

B201 (12/08)



BlumbergExcelsior, Inc., Publisher, NYC 10013

# UNITED STATES BANKRUPTCY COURT
# NOTICE TO CONSUMER DEBTOR(S) UNDER §342(b) OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a joint case (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

## 1. Services Available from Credit Counseling Agencies

With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis. The briefing must be given within 180 days before the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge. The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total fee $299)

1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

3092-1  Notice to Individual Debtor Under §342(b) of the Bankruptcy Code, B201, p.1 (12/08)